IN THE UNITED STATES DISTRICT COURT
FOR THE SOUHERN DISTRICT OF FLORIDA

CASE NO.: 9:21-cv-80042

ADVISOR LAW PLLC,

    Plaintiff,

v.

ADVISORLAW, LLC,

    Defendant,

## COMPLAINT

Plaintiff Advisor Law PLLC ("Plaintiff") sues defendant AdvisorLaw, LLC ("Defendant"), and alleges as follows:

## THE PARTIES

1. Plaintiff is a professional limited liability company organized and existing under the laws of the State of Florida with its principal place of business located in Palm Beach County, Florida. Plaintiff has one member, James D'Loughy, Esq. ("D'Loughy"), who is a citizen and resident of the State of Florida.

2. Defendant is a limited liability company organized and existing under the laws of the State of Colorado with its principal place of business located at 9737 Wadsworth Parkway, Suite 205, Westminster, CO 80021. Upon information and belief, all of Defendant's members are citizens and residents of the State of Colorado.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1331, 1332, 2201, 2202, and 1367.

4. This Court has personal jurisdiction over Defendant because it has maintained sufficient minimum contacts with Florida such that the exercise of personal jurisdiction over it would not offend traditional notions of fair play and substantial justice. Further, Defendant directs its marketing efforts to customers and prospective customers within the State of Florida and has provided services (as described herein) to persons within the State of Florida.

5. Venue properly lies in this district because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## BACKGROUND

6. D'Loughy is a nationally-recognized attorney (licensed to practice law in Florida, Georgia, and Washington, D.C.) who established/registered Plaintiff as a Florida professional limited liability company in March 2010.

7. Plaintiff is a nationally-recognized boutique law firm that provides corporate, transactional, and asset protection services to clients throughout the United States (including, but not limited to, Florida, Texas, Pennsylvania, Georgia, Washington, DC, New Jersey, and New York).

8. Plaintiff markets its services nationwide through its internet website (www.advisorlaw.com). Plaintiff has owned and maintained this website since November 26, 2010. Prior to that date, Plaintiff owned and maintained www.advisorlawfirm.com and www.advisor-lawfirm.com from approximately July 2009 and October 2009, respectively, and continues to own both domains.

9. Plaintiff's website targets both national and international clients seeking customized legal solutions in the areas of business incorporation, business litigation, asset protection, and virtual in-house counseling.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

10. The AdvisorLaw mark is prominently displayed on Plaintiff's website (and has been since Plaintiff's first establishment of a website in 2009) and is used to differentiate Plaintiff from the hundreds/thousands of other firms offering similar services.

11. Plaintiff also advertises its services using the AdvisorLaw mark on its letterhead, business cards, and electronic communications. Plaintiff has consistently used the AdvisorLaw mark in connection with Plaintiff's services/brand since Plaintiff's inception.

12. Through its marketing efforts, networking efforts, and provision of 'white glove' service to clients, Plaintiff has established itself as a preeminent source of corporate and asset protection advice to clients throughout Florida, the United States, and internationally.

13. A substantial portion of Plaintiff's business is dedicated to providing asset protection services to clients throughout the United States and internationally. To that end, Plaintiff reserves specific portions of its website for the targeted representation in the area of asset protection.

14. On February 11, 2016, Defendant was established as a Colorado limited liability company by using the name "AdvisorLaw, PLLC" which was substantially identical to Plaintiff's existing name. Five months later – on July 11, 2016 – Defendant filed an Articles of Amendment with the Colorado Secretary of State that changed its name to "AdvisorLaw, LLC."

15. Upon information and belief, Defendant was fully aware of Plaintiff's existence at the time of Defendant's formation and at the time it filed the July 11, 2016 Articles of Amendment.

16. According to its website (www.advisorlawllc.com), Defendant "is the leading full-service firm providing industry representation to thousands of financial advisors and wealth managers, nationwide."). Defendant purportedly provides the following services to its clients: investor complaints/disputes (such as churning, fraud, breach of fiduciary duty, etc.), disclosure

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

expungement, regulatory defense, practice migration, integrated lending, registered investment advisor ("RIA") setup, and RIA compliance.

17. Defendant provides these services throughout the United States, including to dozens if not hundreds of clients located in Florida. These services have included representing clients in at least eight (8) FINRA arbitration hearings conducted in Florida.

18. Defendant prominently displays its own "AdvisorLaw" mark on its website and throughout its various marketing materials that advertise its services.

19. Defendant's website expressly disclaims that it is not a law firm and does not provide legal services, but states that Defendant 'partners' with attorneys who can provide legal services to prospective customers:

> AdvisorLaw is not a law firm and does not provide legal services. AdvisorLaw does have the expertise to advise and assist financial professionals when it's time to defend your good name. We partner with attorneys who specialize in issues facing financial professionals, and can team with your own lawyers to provide the specific expertise called for.

20. Notably, Defendant's principal member – Dochtor Daniel Kennedy, Esq. ("Kennedy") – is a practicing attorney who, upon information and belief, has an interest in at least one law firm affiliate of Defendant.

21. Despite Defendant's disclaimer that that it does not provide legal services, Defendant's modus operandi is to funnel inquiries requiring legal services from Defendant to such affiliate law firm(s), the result of which is Defendant and its owner(s) profiting from the legal services required by Defendant's clients.

22. Further, although Defendant represents itself to not be a law firm, it curiously identifies on its website a substantial portion of its 'team' as being attorneys, paralegals, and/or law assistants.

23. On June 30, 2018, Plaintiff filed a service mark application (Legal Services in International Class 045) with the United States Patent & Trademark Office (the "USPTO") for the name "AdvisorLaw."

24. Plaintiff's service mark application was rejected by the USPTO and deemed abandoned as of June 14, 2019 because (among other reasons) the mark would purportedly cause confusion with another registrant's mark: "LA LAWADVISOR" – an Australian company that provides various legal-services technology platforms for use by attorneys and consumers alike.

25. On August 17, 2018 (during the pendency of Plaintiff's service mark application and one month after Defendant's name change), Defendant filed for a service mark application for the name "AdvisorLaw" under 035 – Primary Class (Assisting, advising, and consulting financial advisors and wealth managers regarding regulatory compliance and employment transitions).

26. Defendant's application was rejected by the USPTO for the same reason(s) as Plaintiff's mark being rejected – namely, that it would purportedly cause confusion with the "LA LAWADVISOR" mark described above. Defendant's application was later abandoned on June 10, 2019.

27. On August 17, 2018 (the same day Defendant filed the aforementioned application), Defendant filed a second service mark application with the USPTO for the same "AdvisorLaw" mark. For this application, Defendant filed it under 036 – Primary Class (Providing financial consultation services to financial advisors, wealth advisors and financial professionals). That mark was registered with the USPTO on April 2, 2019.

28. Notably, both of Defendant's August 17, 2018 service mark applications claim a first use date of February 11, 2016 – a date that is approximately six (6) years after Plaintiff's own first use of "AdvisorLaw" as denoted by Plaintiff's own service mark application.

29. Further, both of Defendant's applications contain a declaration under penalty of perjury that Defendant was not aware of any other use of the "AdvisorLaw" service mark at the time of submission – either in its identical form or in such near resemblance that would be likely to cause confusion.

30. There is no question that Defendant's use of the "AdvisorLaw" mark has caused confusion.

31. Plaintiff first learned of Defendant's use of the "AdvisorLaw" mark on or around September 29, 2020 when Plaintiff received a voicemail from "Elizabeth calling from AdvisorLaw." The voicemail indicates that the message was intended for "Scott" (presumably a client of Defendant located in Florida) and asks for a return phone call to 720-738-1690. That phone number, however, does not belong to Defendant but rather to Lisa R. Sahli, Esq., an employment attorney located in Denver, CO who is presumably affiliated with Defendant.

32. Thus, even though Defendant actively represents itself as "not a law firm," it appears to make that exact misrepresentation through its affiliated attorneys/law firms who identify themselves to clients and prospective clients as being "AdvisorLaw" itself. Upon information and belief, Defendant not only approves of these misrepresentations but actively requires such from its affiliated attorneys/law firms.

33. Subsequent to the aforementioned voicemail, Plaintiff received at least one additional phone call (from a "Lin Alderman" located in Texas) who was seeking to contact Defendant for the provision of legal services. Mr. Alderman apparently confused Plaintiff for Defendant as the two names are substantially identical and appeared (at least to Mr. Alderman) to be the same company.

34. All conditions precedent to the filing of this action have been performed, occurred, or been waived.

## COUNT I: DECLARATORY JUDGMENT
## OF INVALIDTY AND UNENFORCEABILITY

35. Plaintiff restates and incorporates by reference paragraphs 1 – 34, above, as if fully set forth herein.

36. This is a claim for declaratory judgment arising under the Declaratory Judgment Act, 28 U.S.C. § 2201.

37. Defendant purports to own the rights in and to the following trademark: "AdvisorLaw" (Reg. No. 5,714,353) (the "Mark").

38. Any rights which Defendant may have had in the above-referenced trademark are invalid and unenforceable due to Defendant's commission of fraud before the USPTO. As stated above, the statements under oath in the August 18, 2018 application that Defendant was not aware of any other use of the "AdvisorLaw" mark was false and Defendant knew the statement to be false when made.

39. The aforementioned false statements were material in that the USPTO would not have accepted any declarations without the false statements.

40. Further, Defendant's use of the Mark is likely to cause confusion – and has in fact caused confusion – with Plaintiff's own prior use of the "AdvisorLaw" mark.

41. Accordingly, Plaintiff is entitled to a declaratory judgment that the Mark is invalid and unenforceable as a result of Defendant's fraud before the USPTO and the likelihood of confusion given Plaintiff's prior use.

42. An actual and justiciable controversy exists between Plaintiff and Defendant with respect to the validity of the Mark as Plaintiff has been damaged by the dilution of its own use of "AdvisorLaw" and the consumer confusion associated with both entities. Accordingly, declaratory relief is both appropriate and necessary to establish that said purported trademark rights of Defendant are invalid and unenforceable.

**WHEREFORE**, Plaintiff requests that the Court declare that the Mark is invalid and unenforceable due to the commission of fraud before the USPTO, consumer confusion associated with Defendant's use of the Mark, and Plaintiff's prior use of the Mark. Plaintiff further requests that the Court award Plaintiff its costs and reasonable attorneys' fees incurred in prosecuting this action pursuant to 15 U.S.C. § 1117.

## COUNT II: CANCELLATION OF THE MARK

43. Plaintiff restates and incorporates by reference paragraphs 1 – 34, above, as if fully set forth herein.

44. This is a claim for cancellation of the Mark arising under 15 U.S.C. § 1064.

45. Defendant submitted a declaration to the USPTO stating that it knew of no other existing use of the Mark as of the August 2018 application date.

46. That statement was false because Defendant was well-aware at the time of its August 2018 application that Plaintiff was using a substantially identical mark in connection with its business. As stated above, Defendant filed a name change with the Colorado Secretary of State a month prior to its service mark application to change its name from "AdvisorLaw, PLLC" (which was identical to Plaintiff's name) to "AdvisorLaw, LLC." In searching the USPTO's trademark registration database, Defendant clearly saw that Plaintiff had filed its own service mark

application for "AdvisorLaw" less than two months prior to Defendant's own application and that Plaintiff's application identified a first use date of March 2010.

47. Defendant knew its statements to the USPTO were false when made but proceeded anyway in pursuing registration of the Mark.

48. Said false statements were made with the intention to induce the USPTO to issue the registration for the Mark and, relying upon said false statements, the USPO did in fact place the registration on the Principal Register.

49. In view of the foregoing and the fact that Plaintiff maintained a continuous use of its own "AdvisorLaw" mark since at least March 2010, the Mark is subject to cancellation.

50. Plaintiff has been and will continue to be damaged by the maintenance of the Mark on the Principal Register because the registration has caused consumer confusion and dilution of Plaintiff's own use of the "AdvisorLaw" mark.

**WHEREFORE**, Plaintiff requests that the Court enter judgment against Defendant and issue an Order directing the USPTO to cancel the Mark under 15 U.S.C. § 1064 on the basis that said registration was obtained through the commission of fraud, that Plaintiff had priority in use of the Mark, and that the Mark is likely to and has caused consumer confusion.

### COUNT III: FRAUDULENT PROCUREMENT OF REGISTRATION UNDER 15 U.S.C. § 1120

51. Plaintiff restates and incorporates by reference paragraphs 1 – 34, above, as if fully set forth herein.

52. Defendant's submission of a false declaration to the USPTO constituted procurement of a service mark registration by a false or fraudulent declaration or representation, in violation of 15 U.S.C. § 1120. Defendant's fraudulent conduct caused the USPTO to issue the Mark.

53. Plaintiff has been damaged by the submission of the false and fraudulent declaration as such has resulted in consumer confusion and the loss of consumer goodwill through dilution of Plaintiff's own "AdvisorLaw" mark.

54. Defendant's false and fraudulent representation to the USPTO has caused irreparable harm, monetary damage amounting to greater than $75,000.00, and injury to Plaintiff, the full amount of which will be established at trial of this matter.

**WHEREFORE**, Plaintiff requests judgment against Defendant for compensatory, special, and punitive damages, prejudgment interest, an award of costs, and such other relief as the Court deems just and proper.

### COUNT IV: TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
(Section 43(a) of the Lanham Act)

55. Plaintiff restates and incorporates by reference paragraphs 1 – 34, above, as if fully set forth herein.

56. Plaintiff is the owner of a valid and enforceable "AdvisorLaw" mark that is used in interstate commerce with respect to its legal business.

57. Plaintiff was the first entity/person to use the "AdvisorLaw" mark and trade name in connection with the provision of legal services. Plaintiff has used the "AdvisorLaw" mark since at least March 2010.

58. Defendant, knowing that Plaintiff was actively using the "AdvisorLaw" mark, began using in interstate commerce a substantially identical mark in February 2016, the use of which is likely to cause confusion and has, in fact, caused confusion.

59. Defendant adopted and continues to use its infringing with full knowledge of Plaintiff's superior rights, but without Plaintiff's authorization.

60. Defendant's continued use of its infringing mark is likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant's services with Plaintiff, or the sponsorship or approval by Plaintiff in violation of § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

61. As a direct and proximate result of Defendant's tortious conduct, Plaintiff has incurred substantial damages amounting to greater than $75,000.00, the full amount of which will be established at trial of this matter.

**WHEREFORE**, Plaintiff requests judgment against Defendant for compensatory, special, and punitive damages, prejudgment interest, injunctive relief, an award of costs, and such other relief as the Court deems just and proper.

## COUNT V: COMMON LAW TRADEMARK INFRINGEMENT

62. Plaintiff restates and incorporates by reference paragraphs 1 – 34, above, as if fully set forth herein.

63. Plaintiff is the owner of a valid and enforceable "AdvisorLaw" mark that is used in commerce with respect to its legal business.

64. Plaintiff was the first entity/person to use the "AdvisorLaw" mark and trade name in connection with the provision of legal services. Plaintiff has used the "AdvisorLaw" mark since at least March 2010.

65. Defendant, knowing that Plaintiff was actively using the "AdvisorLaw" mark, began using a substantially identical mark in February 2016, the use of which is likely to cause confusion and has, in fact, caused confusion.

66. As a direct and proximate result of Defendant's tortious conduct, Plaintiff has incurred substantial damages amounting to greater than $75,000.00, the full amount of which will be established at trial of this matter.

**WHEREFORE**, Plaintiff requests judgment against Defendant for compensatory, special, and punitive damages, prejudgment interest, injunctive relief, an award of costs, and such other relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby requests a jury trial on all issues so triable.

Dated: January 8, 2021.                   COPYCAT LEGAL PLLC
                                          3111 N. University Drive
                                          Suite 301
                                          Coral Springs, FL 33065
                                          Telephone: (954) 603-1340
                                          DDesouza@desouzalaw.com

                                          By: /s/ Daniel DeSouza, Esq.
                                              Daniel DeSouza, Esq.
                                              Florida Bar No.: 19291

4846-1017-5796, v. 1